FILED
CHARLOTTE, NC
JAN 31 2025
US DISTRICT COURT
WESTERN DISTRICT OF NC

IN THE UNITED STATES DISTRICT COURT OF THE
WESTERN DIVISION OF NORTH CAROLINA

Case no. 3:25-cv-69-KDB

ALAN HUBBS,

    Plaintiff,

v.

CITY OF CHARLOTTE, JENNA
PARKER, JEFFREY WHEATON;
and C. LAI in their individual and
official capacities,

    Defendants.

_____/

## COMPLAINT

Comes now the Plaintiff, Alan Hubbs, acting *pro se*, and sues the Defendants, City of Charlotte, Jenna Parker, Jeffrey Wheaton, and C. Lai, and alleges:

### The Nature of the Action

1. This is a civil action seeking damages for the violation of Plaintiff Alan Hubbs' constitutional rights under the Fourth and Fourteenth Amendments to the United States Constitution.

2. Plaintiff brings this case pursuant to 42 U.S.C. § 1983 to redress Defendants' unlawful actions, including the false arrest and false imprisonment of the Plaintiff.

3. Plaintiff alleges that Defendants, acting under color of law, violated his right to be free from unreasonable searches and seizures by falsely arresting and imprisoning him without probable cause, solely because he was filming outside a police department building after a police vehicle nearly ran him off the road. Plaintiff further alleges that he was subject to an unreasonable

1

seizure when his cellular phone was confiscated at the time of his false arrest and not returned to him until approximately 7 and 1/2 months later.

## The Parties

4. Plaintiff, Alan Hubbs, is a resident of the City of Charlotte, North Carolina.

5. Defendant City of Charlotte, (hereinafter "the City"), is a municipal corporation organized under the laws of North Carolina and is responsible for the policies, procedures, and actions of the Charlotte-Mecklenburg Police Department, ("CMPD"), and its officers. The City is capable under state statute of bringing and defending lawsuits, including claims involving its police department. The City is responsible for governing and overseeing the policies and actions of CMPD. The City bears legal responsibility for the intentional torts and negligent acts of CMPD officers in the course of their employment. The City is responsible for the selection, training, supervision, promotion, and discipline of police officers and supervisory police officers, including the Defendants named individually in this action. The City is also liable under the doctrine of *respondeat superior* for the acts and omissions of its employees who were acting within the scope of their employment. On information and belief, the City has purchased insurance, either by contract with an insurance company or by participation in an insurance risk pool, that covers the claims raised in this action and has thereby waived any defense of sovereign or governmental immunity.

6. The City, as of the time of the incidents giving rise to this action, waived governmental or sovereign immunity by operation of Section 2-3 of its Code of Ordinances. By

2

Case 3:25-cv-00069-KDB-DCK     Document 1     Filed 01/31/25     Page 2 of 10

ordinance adopted by its elected Council and pursuant to N.C.G.S. § 160A-485.5, the City has waived its governmental immunity for claims arising from the negligence of CMPD officers pursuant to the State Tort Claims Act, which applies to the claims of Plaintiff.

7. Defendant Jenna Parker was at all times material a police officer employed by the Charlotte-Mecklenburg Police Department, acting within the scope of her employment and under color of state law.

8. Defendant Jeffrey Wheaton was at all times material a police officer employed by the Charlotte-Mecklenburg Police Department, acting within the scope of his employment and under color of state law. Upon information and belief, Jeffrey Wheaton has a history of misconduct including involvement in the police exam cheating scandal and flipping a coin to determine whether to arrest someone.

9. Defendant C. Lai was at all times material a police officer employed by the Charlotte-Mecklenburg Police Department, acting within the scope of his employment and under color of state law.

## Jurisdiction and Venue

10. This Court has jurisdiction under 28 U.S.C. §§ 1331 and 1343(a)(3) as this action arises under the Constitution and laws of the United States.

11. This Court has supplemental jurisdiction over Plaintiff's state-law claims pursuant to 28 U.S.C. §1367(a).

12. Venue is proper in the Western District of North Carolina under 28 U.S.C. § 1391(b) because the events giving rise to this action occurred within this judicial district.

## Factual Allegations

13. On or about January 24, 2023 Plaintiff was driving on Independence Blvd.

14. As Plaintiff proceeded on his route, an unmarked police vehicle nearly ran him off the road, causing Plaintiff to be in fear of an immediate collision and to swerve out of his lane to avoid the crash.

15. Shortly thereafter, on January 24, 2023 Plaintiff called internal affairs at CMPD headquarters to attempt to determine who was driving the vehicle so recklessly so that he could file a complaint in the interests of public safety. At shortly before 11:00 a.m. on or about April 19, 2023, Plaintiff arrived at the Charlotte Police Department building and began filming outside the premises, an action he undertook to document the incident and exercise his First Amendment rights.

16. While Plaintiff was filming, Officer Wheaton, accompanied by a Lieutenant Travola, acting on behalf of the City of Charlotte, approached Plaintiff and threatened him with arrest. During the conversation, Plaintiff learned that it was Defendant Jeffrey Wheaton who had been driving the vehicle so recklessly and aggressively on or about January 24th. During the same conversation Defendant Wheaton addressed himself to the Plaintiff and stated: "I assure you that, if I find a reason to arrest you for stalking me I promise you you will go to jail."

17. On or about April 23, 2023 Plaintiff traveled to the CMPD for the purpose of obtaining the bodycam video from the interaction occurring on the morning of April 19th. At that time, after whispering and snickering amongst themselves, Defendant C. Lai and another officer whose name is currently unknown arrested the Plaintiff and placed him in handcuffs, while refusing to tell him what he was being arrested for. Plaintiff later obtained the body camera footage from his arrest. It reveals the above-mentioned whispering, and, in addition, just prior to arresting the Plaintiff, Defendant C. Lai said "He's gonna love this." In saying this, Defendant C. Lai is believed to have been referring to Defendant Jeffrey Wheaton being happy about Plaintiff's

4

impending arrest. While a warrant had been issued for Plaintiff's arrest for stalking, (Exhibit A),there was no probable cause for its issuance, as a perfunctory review of the statute and the facts makes it obvious that the conduct of the Plaintiff did not satisfy the elements of the charge.

18.  The stalking statute under which Plaintiff was illegally charged requires two or more incidents and further requires that the actions of the putative defendant have no legitimate purpose:

North Carolina General Statutes Chapter 14. Criminal Law § 14-277.3A. Stalking.

(a) Legislative Intent.--The General Assembly finds that stalking is a serious problem in this State and nationwide. Stalking involves severe intrusions on the victim's personal privacy and autonomy. It is a crime that causes a long-lasting impact on the victim's quality of life and creates risks to the security and safety of the victim and others, even in the absence of express threats of physical harm. Stalking conduct often becomes increasingly violent over time.
The General Assembly recognizes the dangerous nature of stalking as well as the strong connections between stalking and domestic violence and between stalking and sexual assault. Therefore, the General Assembly enacts this law to encourage effective intervention by the criminal justice system before stalking escalates into behavior that has serious or lethal consequences. The General Assembly intends to enact a stalking statute that permits the criminal justice system to hold stalkers accountable for a wide range of acts, communications, and conduct. The General Assembly recognizes that stalking includes, but is not limited to, a pattern of following, observing, or monitoring the victim, or committing violent or intimidating acts against the victim, regardless of the means.
(b) Definitions.--The following definitions apply in this section:
(1) Course of conduct.--Two or more acts, including, but not limited to, acts in which the stalker directly, indirectly, or through third parties, by any action, method, device, or means, is in the presence of, or follows, monitors, observes, surveils, threatens, or communicates to or about a person, or interferes with a person's property.
(2) Harasses or harassment.--Knowing conduct, including written or printed communication or transmission, telephone, cellular, or other wireless telephonic communication, facsimile transmission, pager messages or transmissions, answering machine or voice mail messages or transmissions, and electronic mail messages or other computerized or electronic transmissions directed at a specific person that torments, terrorizes, or terrifies that person and that serves no legitimate purpose.
(3) Reasonable person.--A reasonable person in the victim's circumstances.

(4) Substantial emotional distress.--Significant mental suffering or distress that may, but does not necessarily, require medical or other professional treatment or counseling.
(c) Offense.--A defendant is guilty of stalking if the defendant willfully *on more than one occasion harasses another person without legal purpose or willfully engages in a course of conduct directed at a specific person without legal purpose* and the defendant knows or should know that the harassment or the course of conduct would cause a reasonable person to do any of the following:
(1) Fear for the person's safety or the safety of the person's immediate family or close personal associates.
(2) Suffer substantial emotional distress by placing that person in fear of death, bodily injury, or continued harassment.

(Emphases added).

19. On April 23, 2023 CMPD officers confiscated Plaintiff's cellular phone. It was not returned to Plaintiff until on or about December 6, 2023. Defendant Jenna Parker conducted an interrogation of the Plaintiff and filed the charge against Plaintiff for criminal stalking. (Exhibit A). That charge, and the entire criminal case against Plaintiff, was dismissed on or about November 30, 2023. The arrest and warrant were without probable cause or legal justification, as indicated by the fact that the criminal case was dismissed. The arrest was in violation of Plaintiff's Fourth and Fourteenth Amendment rights.

20. The individual Defendants are not immune from liability because their conduct was in the nature of discretionary actions which were corrupt, malicious, beyond or outside the scope of their duties, in bad faith and/or willful and deliberate.

21. The actions of Defendants caused Plaintiff to suffer physical actual financial losses, including attorneys' fees and loss of income, emotional distress, physical pain and mental anguish, for which he is entitled to just compensation.

22. Defendants' actions were unreasonable under the circumstances, excessive and inappropriate to the situation at hand, exceeded their statutory authority, and made with reckless indifference and disregard to the health, safety, and rights of Plaintiff and/or intended to harm him.

As a direct and proximate result of Defendants' actions, Plaintiff suffered a loss of liberty, humiliation, indignity, and mental suffering in addition to the other damages alleged herein. Plaintiff seeks and is entitled to nominal, actual, and consequential damages, in an amount to be determined by a jury. Plaintiff seeks and is entitled to punitive damages from Defendants as they acted with malice and deliberate, willful, and wanton disregard of Plaintiff's rights and privileges under both state and federal law.

**Count 1 - Violation of Civil Rights under 42 U.S.C. § 1983 (FALSE ARREST)**

23. Plaintiff re-alleges paragraphs 1-22 here.

24. By detaining and arresting Plaintiff without probable cause or reasonable suspicion, Defendants deprived Plaintiff of his rights under the Fourth Amendment to the U.S. Constitution, as made applicable to the states by the Fourteenth Amendment, to be free from unreasonable searches and seizures. The seizure of Plaintiff's cellular phone, and the failure to return it to Plaintiff for approximately 7 and 1/2 months, was also an unreasonable search and seizure in violation of said Amendments.

25. The actions of Defendants caused Plaintiff to suffer actual financial losses including attorneys' fees and loss of income, emotional distress, physical pain and mental anguish, for which he is entitled to just compensation.

WHEREFORE, Plaintiff demands judgment for all available forms of damages against all Defendants and demands trial by jury on Count 1.

**Count 2 - Violation of Civil Rights Under 42 U.S.C. § 1983 (FALSE IMPRISONMENT)**

26. Plaintiff re-alleges paragraphs 1-22 here.

27. Defendants acted under color of state law to confine Plaintiff against his will, without probable cause or legal justification, constituting false imprisonment.

7

28. Defendants' actions violated Plaintiff's rights under the Fourth and Fourteenth Amendments to the U.S. Constitution.

29. The actions of Defendants caused Plaintiff to suffer actual financial losses including attorneys' fees and loss of income, emotional distress, physical pain and mental anguish, for which he is entitled to just compensation.

WHEREFORE, Plaintiff demands judgment for all available forms of damages against all Defendants and demands trial by jury on Count 2.

### Count 3 - Conspiracy to Violate Civil Rights Under 42 U.S.C. §1985(3)

30. Plaintiff re-alleges paragraphs 1-22 here.

31. The individual Defendants, Wheaton, Parker and Lai, agreed to work together for the common purpose of violating Plaintiff's constitutional rights by arresting him and charging him without probable cause. They targeted him with a discriminatory basis: the arrest was in retaliation for Plaintiff's exercise of his first amendment rights to film police officers in the performance of their duties and to speak freely and without constraint.

32. Each of the Defendants engaged in one or more overt act in furtherance of the conspiracy and its goals.

33. As the result of the conspiracy, Plaintiff suffered actual financial losses including attorneys' fees and loss of income, emotional distress, physical pain and mental anguish, for which he is entitled to just compensation.

WHEREFORE, Plaintiff demands judgment for all available forms of damages against all Defendants and demands trial by jury on Count 3.

### Count 4 - False Imprisonment

34. Plaintiff re-alleges paragraphs 1-22 here.

35. Defendants, acting in concert and in their official capacities arrested, restrained and incarcerated Plaintiff on or about April 23, 2023 without probable cause. The warrant was obtained without probable cause. There was no legitimate legal basis for arresting Plaintiff or charging him with stalking.

36. Defendants illegally restrained the Plaintiff, by force and against Plaintiff's will, resulting in damages being sustained by the Plaintiff.

WHEREFORE, Plaintiff demands all available forms of damages against all Defendants, and demands trial by jury on Count 4.

<u>Alan Hubbs</u>
Alan Hubbs, *pro se*
4121 Pineview Road
Charlotte, NC 28211
704-377-8954

11-18-2024

9

Case 3:25-cv-00069-KDB-DCK   Document 1   Filed 01/31/25   Page 9 of 10

## Certification Regarding Use of Artificial Intelligence

I hereby certify that the Complaint complies with the requirements of the Standing Order In Re: Use of Artificial Intelligence (3:24-mc-104).

No artificial intelligence was employed in writing the Complaint.

*Alan Hubbs*
Alan Hubbs, *pro se*
4121 Pineview Road
Charlotte, NC 28211

704-377-8954

Dated: November 19, 2024.